STATE OF MISSOURI, Respondent, v. WILLIAM
   WOODSON and MARTHA WOODSON, Appel-
   lants.

Kansas City Court of Appeals, January 5, 1914.

1. CRIMINAL LAW: Receiving Stolen Goods: Evidence: What
   State Must Prove.  In a prosecution for receiving stolen goods,
   the State must prove, first that the goods were stolen and
   that the defendant received them knowing they were stolen.
   If the evidence does not do this, the prosecution will fail.

2. ———: ———: ———: Reasonable Doubt: Mere Suspicion.
   In a criminal prosecution, one cannot be convicted on evidence
   which, at best, raises only a suspicion of guilt, however strong
   such suspicion may be.

Appeal from Lafayette Criminal Court.—*Hon. John A. Rich,* Judge.

REVERSED.

*Chiles & Chiles* and *Clarence Vivion* for appellants.

*Charles A. Keith* for respondent.

TRIMBLE, J.—The defendants, a colored man and his wife, were, under section 4554, Revised Statutes 1909, jointly charged by an information in one count with having feloniously received property of the value of thirty-seven dollars, knowing it to have been feloniously stolen.

The jury returned the following verdict: "We the jury find the defendants guilty *as charged in the information* and assess the punishment of each as follows, William Woodson at a fine of $100 and Martha Woodson at a fine of $100.

"GEORGE A. KLINGENBERY, Foreman."

An appeal was taken to this court. But we were of the opinion that, as the information charged a felony and as *the jury found the defendants guilty of a felony,* we were without jurisdiction to hear the cause, and, therefore, ordered it transferred to the Supreme Court. As we viewed the verdict, the jury had not found the defendants guilty of a misdemeanor, but had found them guilty of a felony and had assessed a punishment below the legal limit, in which case it was the trial judge's duty to pronounce sentence and render judgment according to the lowest limit prescribed by law. [Sec. 5255, R. S. 1909.] There was no controversy over the value of the goods; they were clearly worth more than thirty dollars; and while the jury were not bound by the testimony as to the value or the quantity received, yet as the jury did not say they

were of less value but said the defendants were guilty *as charged,* it was as reasonable to suppose that the jury erroneously assessed a punishment below the limit as that they arbitrarily fixed the value of the goods below thirty dollars. As we understood it, the case was not like State v. Greenspan, 137 Mo. 149, for there the jury *found that the stolen property received was of less value than thirty dollars.* We felt that even if the verdict, owing to the punishment assessed, could be *construed* as convicting the defendants of a misdemeanor only, yet, as the verdict expressly said the defendants were guilty *as charged,* the question to be decided was whether it was a conviction of a felony or a misdemeanor, and, in that event, the proper tribunal to pass on that question is the Supreme Court. According to its terms, the verdict found the defendants guilty of a felony. If this was correct, then clearly the Supreme Court had jurisdiction and not we. If, on the other hand, it was doubtful whether it was a verdict of felony or misdemeanor, still the Supreme Court ought to pass on that question, since it must be the judge of what is or is not within its jurisdiction.

The Supreme Court has passed on the case, however, and has held that jurisdiction is with us. [State v. Woodson et al., 154 S. W. 705.] While the decision does not specifically say so, we infer that the holding of the Supreme Court is, in effect, that the above verdict must be construed to be a conviction of misdemeanor only. When the nature of the verdict has been thus determined by the Supreme Court to be merely a conviction of misdemeanor, logically the jurisdiction to pass upon the alleged errors in the case is with us, especially as the cases of State v. McMahill, 214 Mo. 310, and State v. Wilson, 230 Mo. 647, have been overruled. [State v. Woodson et al., supra.]

The foregoing is here stated in order that our reasons for having transferred the case to the Supreme Court may be known and understood. We felt

that wherever there was a doubt as to whether jurisdiction was with the Supreme Court or with us, the Supreme Court should be the body to resolve that doubt. The Supreme Court having resolved that doubt by declaring the jurisdiction of this case to be in us, we proceed to a consideration of the case itself.

The defendants are respectable colored persons who have resided in their community for years, and who have hitherto borne good reputations. They ran a restaurant and rooming house in Lexington, or rather the wife did in the daytime, assisted at night by her husband who was a coal miner and who worked at the mines during the day.

The property charged to have been received, consisting of a pistol valued at fifteen dollars and four pairs of shoes valued at twenty-two dollars, was stolen by two negro men who were entire strangers in the town, but who, it afterwards was discovered, were ex-convicts. However, the defendants did not know this. These two men came to Lexington about the first of March, 1912, stopping first at a hotel and then on March 3rd going to the restaurant and rooming house owned by defendants. There they engaged a room but did not get their meals at the place. They paid for the room they occupied. They worked around town doing odd jobs such as shoveling snow, etc., and seemed to have behaved themselves until in the afternoon of March 6th, when they stole the pistol and one of them took it to the restaurant and showed it to Mrs. Woodson telling her he was afraid to carry it because he was afraid of the law against carrying concealed weapons, and asked her to keep it for him. She was afraid to touch the pistol but told him he could put it in the kitchen cabinet which he did. All this transaction about the pistol occurred before William Woodson, her husband, returned from his work at the mines. And there is no evidence that he knew anything about the pistol or of its being in the restaurant.

Some time after that, on the same day, the two convicts stole four pair of shoes, and one of them took the shoes to his room on the third floor of defendant's rooming house. This also occurred before the old man Woodson returned from the mines.

Between 8:30 and 9 o'clock that same night the burglary of a store and the larceny of the shoes was discovered and the sheriff arrested the two negro ex-convicts at or near the restaurant and went with them to their room on the third floor. By this time the defendant, William Woodson, had returned from his work, had eaten his supper and had begun to do his chores about the house. He had gone to the room of the two negro strangers with a slop bucket, and while there saw the shoes lying on a box in the room. Before he left the room, the sheriff appeared with the two thieves under arrest and the shoes and two thieves were taken away by him. According to the conceded testimony the shoes had been in the house but a very short time. Later the sheriff returned and arrested the Woodsons. There is no evidence to show that old man Woodson knew that the shoes or the pistol were stolen, nor is there any evidence to show that he received them. In a prosecution for receiving stolen goods, the State must prove that goods were stolen, and that the defendant received them knowing they were stolen. [State v. Smith, 37 Mo. 58, l. c. 67.] As to the old man, the State failed to do this.

As to the evidence relied upon to show the guilt of Martha Woodson, we think it is equally unsatisfactory. In order to convict her the State must prove that she not only received the goods but that she received them knowing they were stolen. As we view the record there is no substantial evidence that she received the shoes or had anything to do with them. And as to the pistol there is no evidence showing that she received it knowing it had been stolen. Before this old colored woman, who hitherto has borne a good reputa-

tion, can be convicted of receiving stolen goods, the evidence should show beyond a reasonable doubt that she received them and that she did so with the knowledge that they were stolen. The evidence does not do this. At the most it is sufficient only to raise a mere suspicion against her. One cannot be convicted of crime on evidence which creates a mere suspicion of guilt, however strong such suspicion may be. [State v. Scott, 177 Mo. 665; State v. Wickisen, 177 Mo. 674; State v. Ballard, 104 Mo. 634.] As the State's evidence was fully developed and there is nothing to show that anything new will be ascertained which can be added to what had already been shown, there is no reason for remanding the case for a new trial. It is unnecessary to notice the other questions presented. The judgment is, therefore, reversed and the defendants are discharged. All concur.