STATE of Missouri, Plaintiff-Respondent,

v.

Richard E. HARLEY, alias Stephen Allen Young, Defendant-Appellant.

No. 9688.

Missouri Court of Appeals, Springfield District.

Sept. 23, 1976.

Motion for Rehearing or Transfer Denied Oct. 8, 1976.

Application to Transfer Denied Dec. 13, 1976.

William J. Fleischaker, Public Defender, 29th Judicial Circuit, Joplin, for defendant-appellant.

John C. Danforth, Atty. Gen., Robert H. House, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before STONE, P. J., and HOGAN and TITUS, JJ.

HOGAN, Judge.

This appeal arises out of the same episode as *State v. Harley*, 543 S.W.2d 288, No. 9681, reported concurrently herewith. In this case, defendant Harley, upon trial to the court, was found guilty of robbery in the first degree as defined and denounced by § 560.120, RSMo 1969, V.A.M.S.[1] The Second Offender Act, § 556.280, was found to be applicable, and defendant's punishment was assessed at imprisonment for life. Defendant appealed; we ordered this cause and No. 9681, *State v. Harley*, supra, consolidated for purposes of argument only.

The facts we recited as background material in No. 9681 need not be repeated; robbery as denounced by § 560.-120 has been generally defined as a compound larceny, composed of the crime of larceny from the person with the aggravation of force, actual or constructive, used in the taking, *State v. Gardner*, 356 Mo. 1015, 1016–1017, 204 S.W.2d 716, 717[2] (1947), with the qualification that the gravamen of

1. References to statutes and rules are to RSMo 1969, V.A.M.S. and V.A.M.R.

the offense is the taking of the property of another from the person by violence or by fear and the ownership of the property taken is not material to and does not affect the offense. *State v. Wright*, 476 S.W.2d 581, 584[2] (Mo.1972). Additionally, the offense may be committed in two different ways, by taking from the person or in his presence the property of another. *State v. Davis*, 482 S.W.2d 486, 488[1] (Mo.1972). In this case the record clearly shows that on July 9, 1973, the defendant took $4,240 in cash in the presence of Foodtown employees; by his statement and by the testimony of the head clerk, defendant held the head clerk and other employees at gunpoint while the money was being collected. The head clerk, Jenness, testified directly that he was put in fear. The money, or sack of money, was identifiable in this case, and it was shown that when defendant was taken in custody, he was in possession of the very sack of money stolen in Jenness' presence. It is therefore obvious that the elements of a robbery were established upon the defendant's trial for first-degree murder, and therefore evidence sufficient to convict defendant of robbery in the first degree appears in the transcript filed in case No. 9681.

That transcript reflects that on October 9, 1973, the defendant was charged with first-degree murder. The supplemental transcripts filed in connection with this appeal show that on the same day, in a separate (amended) information, defendant was charged with first-degree robbery arising out of the same transaction. Following defendant's conviction in case No. 9681, his presence—in Jasper County—was secured by writ of habeas corpus ad prosequendum, and on January 16, 1974, defendant by motion pleaded former jeopardy of the offense of robbery in the first degree in the manner prescribed by Rule 25.05(b). The motion, which is essentially a plea of autrefois convict, sought to invoke the bar of the double jeopardy clause of U.S.Const. amend. V, made applicable to the states through U.S. Const. amend. XIV. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *State v. Glover*, 500 S.W.2d 271, 273[6] (Mo.App.1973).

The trial procedure followed here deserves a word of comment. On January 31, 1974, the defendant appeared in person and with the public defender. The following exchange occurred:

THE COURT: All right, Mr. Harley, would you step up, please?

THE DEFENDANT: Yes, sir.

THE COURT: Did you hear the pronouncement by your attorney concerning waiver of jury trial in Case Number 14544 wherein you are charged with First Degree Robbery?

THE DEFENDANT: I heard on a condition. To waive the jury trial on the terms that they would drop the kidnapping charge.

\* \* \* \* \* \*

MR. PATTEN: When he's waived the trial by jury and submitted the case to the Court on the previous transcript, I will do that.

THE COURT: Well, I want you to understand, Mr. Harley . . . you do have the right to a trial by jury, do you understand that?

THE DEFENDANT: I understand that.

BY THE COURT:

Q. And it is my understanding you did in fact have a jury trial on the case in Division II of this Court wherein you were charged with First Degree Murder, is this correct?

A. Yes, Your Honor.

Q. Now, we are prepared to afford you the same trial in this armed robbery case. Now, I want you to understand that you are entitled to that jury trial irrespective of what the Prosecutor does with regard to Case Number 14542, which is the kidnapping charge. Do you understand that irrespective of what he does on this kidnapping charge and—do you understand that?

A. Yes, I do.

Q. Understanding that, do you desire to submit this case—now, it is my under-

standing that according to your attorney and the Prosecutor, I was to—rather than proceed to call witnesses and have you in Court to be confronted with those witnesses and have an opportunity to cross-examine them, that your attorney and the Prosecutor were going to agree that I should read the transcript which has been prepared by the court reporter of the evidence presented in the first degree murder trial, do you understand that?

A. I understand that.

Q. In other words, rather than having a trial by calling witnesses to testify, it was my understanding that the Prosecutor and your attorney had agreed that I should simply read the testimony, or transcript of the testimony as prepared by the court reporter, in the first degree murder case, do you understand that?

A. Yes.

Q. And you understand that you would have the right to have these witnesses called and be confronted by them and have the right to cross-examine them and have the right to have your attorney with you?

A. I understand that.

Q. Have you gone over all those matters with your attorney?

A. Yes, I have.

Q. And having gone over those matters with him, do you desire me to proceed in that fashion, to examine and read the transcript of the evidence and base my decision in this present case, wherein you are charged with robbery, on a reading of the transcript?

A. Yes, sir.

Q. All right, I have made the following entry in Case Number 14542: State enters nolle prosequi and the case is dismissed. That's the kidnapping case. Now, the first degree robbery case, this is Case Number 14544, I have indicated that you have withdrawn your motion to consolidate this case with the case that was just dismissed; and I have also indicated that you have waived your right to jury

trial and that you agree to submit this case to the Court for trial on the transcript of testimony in Case Number 14546, that was the murder case that was tried. Now, do you understand what I have done?

A. Yes, sir.

Q. And do you agree to what I have done?

A. Yes, sir.

Q. All right, based upon that representation I will proceed to examine and read the transcript, and after I have read the transcript and gone over the transcript, you will be called back into Court and advised of my decision in the case.

The record further shows that the trial court read the record, that defendant was present when sentence was pronounced, that he was afforded allocution and that the trial court explicitly found defendant guilty of robbery in the first degree. No comment is made by either party upon this "trial by transcript" and we make no comment beyond observing that such a procedure involves an extensive waiver of constitutionally protected rights. We emphasize that *no* objection to the trial procedure is raised on this appeal.

On the merits, little discussion is required. The defendant's sole point, as noted, is that this conviction violates the double jeopardy prohibition of U.S.Const. amend. V. The imprecise rationale of the authorities he cites and the diffuseness of his argument vividly illustrate once again that the term "double jeopardy" describes a judicial deadfall rather than a precise notion, as witnessed by the variety of routes to the same conclusion in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). As authority for his claim of double jeopardy, defendant cites *State ex rel. Wikberg v. Henderson,* 292 So.2d 505 (La.1974). In *Wikberg,* two defendants entered a store and attempted to rob the proprietor; the proprietor resisted, drew a weapon and was killed in the ensuing gunfight. The evidence indicated that Wikberg fired the fatal shot. Wikberg entered a plea of guilty

to the Louisiana equivalent of our first-degree felony murder, and later entered a plea of guilty to a charge of attempted armed robbery. In a postconviction habeas corpus proceeding, Wikberg claimed violation of the double jeopardy clause of U.S. Const. amend. V. Applying a theory of collateral estoppel, the Louisiana court held that when the gravamen of the second offense is essentially included within the offense for which the defendant was first tried, the second prosecution is barred because of the former jeopardy. *State ex rel. Wikberg v. Henderson*, supra, 292 So.2d at 508–509[4]. The majority concluded that Wikberg's conviction of attempted armed robbery violated the prohibition against double jeopardy because proof of the commission of robbery was an essential element of the State's proof of felony murder. There was a vigorous dissent, we note, arguing that murder and robbery are not and cannot be the "same offense" even though they are both committed as part of the same transaction, and as authority one dissenter cited *State v. Moore*, 326 Mo. 1199, 33 S.W.2d 905 (1930).

The defendant also cites *State v. Parsons*, 513 S.W.2d 430 (Mo.1974). In *Parsons*, defendant was charged with first-degree murder and bombing in a two-count indictment. The evidence indicated that the defendant had attached a bomb to his former wife's automobile. The bomb exploded; the former wife was, in the court's words, "strewn over a wide area". A jury found the defendant guilty on both counts, first-degree murder and bombing. On appeal, the defendant contended the State should have been compelled to elect between Count I and Count II. Our Supreme Court agreed, holding that if there is but a single act of force proved as an incidental means of committing a murder, that act of force may not also be charged as a separate crime, citing *State v. Richardson*, 460 S.W.2d 537, 539[1] (Mo. banc 1970).

Neither case aids the defendant. The Louisiana case appears to apply a theory of collateral estoppel, but, as applicable to this appeal, our Supreme Court has rejected that doctrine on the theory that robbery and murder are separate and distinct offenses, even though they arise out of the same transaction. *State v. Damico*, 513 S.W.2d 351, 358–359[4] (Mo.1974). As for the suggestion that both prosecutions involve the same violent act, it is perfectly clear that there was more than one act of violence here; the act of force proved as a means of robbery—holding Jenness and the other employees at gunpoint—was different and distinct from the act of force proved as a means of committing murder, and *State v. Parsons*, supra, would in no event be controlling.

In point of fact, our courts have again and again rejected the defendant's contention that prosecution for robbery following conviction of felony-murder in the commission of that robbery constitutes prosecution for the same offense within the meaning of the term "double" or "former" jeopardy. *State v. Damico*, supra, 513 S.W.2d at 358–359[4]; *Crews v. State*, 510 S.W.2d 425, 431–432 [4, 5] (Mo.1974); *Wells v. State*, 504 S.W.2d 96, 97[2] (Mo.1974), cert. denied, 419 U.S. 1075, 95 S.Ct. 665, 42 L.Ed.2d 671 (1974); *State v. King*, 375 S.W.2d 34, 37[2] (Mo.1964); *State v. Moore*, supra, 326 Mo. at 1204–1205, 33 S.W.2d at 906–907[4]. It would serve no useful purpose to discuss those precedents, by which we are firmly held and bound. The defendant does not stand twice vexed by his conviction in this case; the judgment is accordingly affirmed.

All concur.